UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

LYNN C.,[1]

       Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.
_____

21-CV-00112-LJV
DECISION & ORDER

On January 21, 2021, the plaintiff, Lynn C. ("Lynn"), brought this action under the Social Security Act ("the Act"). Docket Item 1. She seeks review of the determination by the Commissioner of Social Security ("Commissioner") that she was not disabled.[2] *Id.* On December 14, 2021, Lynn moved for judgment on the pleadings, Docket Item 7; on May 13, 2022, the Commissioner responded and cross-moved for judgment on the pleadings, Docket Item 8; and on June 24, 2022, Lynn replied, Docket Item 9.

---

[1] To protect the privacy interests of Social Security litigants while maintaining public access to judicial records, this Court will identify any non-government party in cases filed under 42 U.S.C. § 405(g) only by first name and last initial. Standing Order, Identification of Non-Government Parties in Social Security Opinions (W.D.N.Y. Nov. 18, 2020).

[2] Lynn applied for both Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). One category of persons eligible for DIB includes any adult with a disability who, based on her quarters of qualifying work, meets the Act's insured-status requirements. *See* 42 U.S.C. § 423(c); *Arnone v. Bowen*, 882 F.2d 34, 37-38 (2d Cir. 1989). SSI, on the other hand, is paid to a person with a disability who also demonstrates financial need. 42 U.S.C. § 1382(a). A qualified individual may receive both DIB and SSI, and the Social Security Administration uses the same five-step evaluation process to determine eligibility for both programs. *See* 20 C.F.R. §§ 404.1520(a)(4) (concerning DIB), 416.920(a)(4) (concerning SSI).

For the reasons that follow, this Court denies Lynn's motion and grants the Commissioner's cross-motion.[3]

## STANDARD OF REVIEW

"The scope of review of a disability determination . . . involves two levels of inquiry." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). The court "must first decide whether [the Commissioner] applied the correct legal principles in making the determination." *Id*. This includes ensuring "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the Social Security Act." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (alterations omitted) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)). Then, the court "decide[s] whether the determination is supported by 'substantial evidence.'" *Johnson*, 817 F.2d at 985 (quoting 42 U.S.C. § 405(g)). "Substantial evidence" means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles." *Johnson*, 817 F.2d at 986.

---

[3] This Court assumes familiarity with the underlying facts, the procedural history, and the decision of the Administrative Law Judge ("ALJ") and refers only to the facts necessary to explain its decision.

**DISCUSSION**

I.  **THE ALJ'S DECISION**

On March 5, 2020, the ALJ issued a decision finding that Lynn had not been under a disability between her alleged disability onset date, June 30, 2017, and the date of the decision.  *See* Docket Item 5 at 18-32.  The ALJ's decision was based on the five-step sequential evaluation process under 20 C.F.R. §§ 404.1520(a) and 416.920(a).  *See id.*

At step one, the ALJ found that Lynn met the insured status requirements of the Act through March 31, 2023, and had not engaged in substantial gainful activity since her alleged disability onset date.  *Id.* at 20-21.  At step two, the ALJ found that Lynn suffered from several severe, medically determinable impairments: fibromyalgia, inflammatory polyarthropathy, lumbar spine spondylosis with myelopathy, chronic pain syndrome, post-traumatic stress disorder, major depressive disorder, anxiety disorder with panic attacks, obesity, left foot degenerative joint disease, and right foot first metatarsophalangeal joint osteoarthritis.  *Id.* at 21.

At step three, the ALJ found that Lynn's severe, medically determinable impairments did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  *See id.* at 21-24.  More specifically, the ALJ found that Lynn's physical impairments did not meet or medically equal listings 1.02 (major dysfunction of a joint due to any cause), 1.04 (disorders of the spine), or 14.09 (inflammatory arthritis).  *Id.* at 21.  The ALJ likewise concluded that Lynn's mental impairments did not meet or medically equal listings 12.04 (depressive, bipolar, and related disorders), 12.06 (anxiety and obsessive-compulsive disorders),

and 12.15 (trauma- and stressor-related disorders).  *Id.* at 22.  In assessing Lynn's mental impairments, the ALJ found that Lynn was: (1) mildly impaired in understanding, remembering, or applying information; (2) mildly impaired in interacting with others; (3) moderately impaired in maintaining concentration, persistence, or pace; and (4) moderately impaired in adapting or managing herself.  *Id.* at 23-24.

The ALJ then found that Lynn had the RFC[4] to perform "medium work" as defined in 20 C.F.R. §§ 404.1567(c) and 416.967(c) with the following additional limitations:

> [Lynn] can frequently operate hand controls, reach, push, pull, handle, finger, and feel with both upper extremities.  [Lynn] can occasionally push or pull or operate foot controls with both lower extremities.  [Lynn] can frequently kneel, crouch, stoop, balance, and crawl, and [she] can frequently climb stairs and ramps.  [Lynn] can never climb ladders, ropes[,] and scaffolds, and [she] can never be exposed to unprotected heights and moving mechanical parts.  [Lynn] can tolerate occasional exposure to vibration.  In addition, [Lynn] is able to understand, carry-out, and remember simple instructions, and make simple[,] work[-]related decisions.  [Lynn] can occasionally deal with changes in a routine work setting.

*Id.* at 24-25.

At step four, the ALJ found that Lynn was unable to perform her past relevant work as a senior credit analyst.  *Id.* at 30; *see Dictionary of Occupational Titles* 241.267-022, 1991 WL 672242 (Jan. 1, 2016).  But given Lynn's age, education, work experience, and RFC, the ALJ found at step five that Lynn could perform substantial gainful activity as an assembler or a counter-supply worker.  Docket Item 5 at 30-31;

---

[4] A claimant's residual functional capacity ("RFC") "is the most [she] can still do despite [her] limitations . . . in an ordinary work setting on a regular and continuing basis."  *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96-8p, 1996 WL 374184, at *2 (Jul. 2, 1996)).  "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule."  *Id.*

*see Dictionary of Occupational Titles* 806.684-010, 1991 WL 681470 (Jan. 1, 2016); *id.* at 319.687-010, 1991 WL 672772.  Therefore, the ALJ found that Lynn was not entitled to DIB or SSI.  Docket Item 5 at 31-32.

## II.  ALLEGATIONS

Lynn argues that the ALJ erred in two ways.  *See* Docket Item 7-1.  First, she argues that the ALJ's RFC determination did not account for the full extent of her impairment in mental work-related functioning as found by a consultative examiner, Agnes R. Jonas, Psy.D., and a state agency psychological consultant, M. Tatar, Ph.D. *Id.* at 11.  Second, she argues that the ALJ improperly evaluated her subjective complaints.  *Id.* at 15.  This Court disagrees and therefore affirms the Commissioner's finding of no disability.

## III.  ANALYSIS

### A.  Dr. Jonas's and Dr. Tartar's Findings

Lynn first argues that the ALJ's RFC determination did not account for Dr. Jonas's finding that Lynn was moderately impaired in regulating emotions, controlling behavior, and maintaining well-being or Dr. Tartar's finding that Lynn could handle routine work "that did not involve timed tasks."  *See* Docket Item 7-1 at 15.

An ALJ must "weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole."  *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013); *accord Schillo v. Kijakazi*, 31 F.4th 64, 78 (2d Cir. 2022).  But that does not mean that the RFC needs to "perfectly correspond with any of the opinions of medical sources cited in [the ALJ's] decision."  *Matta*, 508 F. App'x at 56.  As long as the ALJ considers

5

all the medical evidence and appropriately analyzes the medical opinions, an RFC consistent with the record is not error.  See 20 C.F.R. §§ 404.1545, 416.945; see also Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013) (holding that remand is not necessary "[w]here an ALJ's analysis at Step Four regarding a claimant's functional limitations and restrictions affords an adequate basis for meaningful judicial review, applies the proper legal standards, and is supported by substantial evidence").

      Dr. Jonas examined Lynn on May 23, 2018, and opined, among other things, that Lynn was moderately impaired in regulating emotions, controlling behavior, and maintaining well-being.  See Docket Item 5 at 470.  The ALJ found Dr. Jonas's opinion "somewhat persuasive" because it was consistent with the other medical evidence in the record and supported by Dr. Jonas's own examination of Lynn.  Id. at 29.

      Dr. Tartar assessed Lynn's mental residual functional capacity as a part of the initial disability determination.  See id. at 57-58, 61-63, 70-71, 74-76.  Dr. Tartar concluded that Lynn's "ability to handle stress and pressure in the work place [sic] [was] reduced but adequate to handle the stresses of routine work that did not involve timed tasks."  Id. at 63, 76.  The ALJ found Dr. Tartar's opinion "persuasive."  Id. at 29.

      Lynn says that the RFC did not account for either Dr. Jonas's finding of moderate impairment in regulating emotions, controlling behavior, and maintaining well-being or Dr. Tartar's finding that she could perform "routine work that did not involve timed tasks."  See Docket Item 7-1 at 15.  This Court disagrees.

      First, the ALJ certainly addressed the extent to which Dr. Jonas and Dr. Tartar found Lynn to be impaired in her mental work-related functioning.  The ability to regulate emotions, control behavior, and maintain well-being—the basis for Dr. Jonas's finding

that Lynn was moderately impaired—simply describes a claimant's ability to adapt or mange himself or herself.  *See* 20 C.F.R. Pt. 404, Subpt. P, App'x 1 § 12.00E(4).  Along the same lines, Dr. Tartar's opinion that Lynn could "handle the stresses of routine work that did not involve timed tasks," Docket Item 5 at 63, 76, was also related to Lynn's moderate impairment in adapting and managing herself, *see* 20 C.F.R. Pt. 404, Subpt. P, App'x § 12.00E(4) (describing examples of a claimant's ability to adapt or manage oneself to include "[r]esponding to demands; adapting to changes; [and] managing [his or her] psychologically based symptoms").  And the ALJ agreed with Dr. Jonas and Dr. Tartar that Lynn's ability to adapt or manage herself was moderately impaired.  *See* Docket Item 5 at 24.  So the ALJ addressed and agreed with the degree of impairment Lynn now highlights.

What is more, the RFC adequately accounted for the moderate impairments found by Drs. Jonas and Tartar.  The ALJ restricted Lynn to: (1) understanding, carrying out, and remembering simple instructions; (2) making simple work-related decisions; and (3) experiencing only occasional changes in a routine work setting.  *Id.* at 25.  Such work restrictions are sufficient to address Lynn's moderate impairments in her mental work-related functioning.[5]  *See Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010) (affirming ALJ's decision that claimant could perform prior unskilled work where "[n]one of the clinicians who examined [the claimant] indicated that she had anything more than moderate limitations in her work-related functioning, and most reported less severe

---

[5] The RFC's limitations also restricted Lynn to "unskilled" work, as confirmed by the vocational expert's testimony that a hypothetical claimant with Lynn's impairments could perform work as an assembler, hospital cleaner, or counter-supply worker, all "medium, unskilled" jobs.  *See* Docket Item 5 at 49-50.

7

limitations."); *McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014) (finding that moderate limitations in the four areas of mental work-related functioning are not inconsistent with a limitation to simple, unskilled work); *Mangual v. Comm'r of Soc. Sec.*, 600 F. Supp. 3d 313, 329 (S.D.N.Y. 2022) ("As a general matter, moderate limitations are not an impediment to the ability to perform gainful activity, particularly when an RFC has already limited a claimant to unskilled, routine work.").

As for Dr. Tartar's specific conclusion that Lynn could "handle the stresses of routine work that did not involve timed tasks," Docket Item 5 at 63, 76, the ALJ did not need to incorporate a specific limitation for timed tasks in the RFC, *see, e.g.*, *Thomas v. Berryhill*, 37 F. Supp. 3d 235, 246 (W.D.N.Y. 2018) ("[E]ven if the ALJ erred in declining to explicitly incorporate all of the limitations opined by [the state agency consultant] into his RFC finding, that finding sufficiently accounted for such limitations . . . ."). The ALJ's restriction of Lynn to unskilled work, and particularly the limitation to only occasional changes in a routine work setting, adequately accounted for Dr. Tartar's findings. *Cf. Cowley v. Berryhill*, 312 F. Supp. 3d 381, 384 (W.D.N.Y. 2018) (finding that an RFC limiting a claimant to "simple, unskilled tasks with no more than occasional changes in the work setting and without an hourly, machine-driven assembly line production rate" adequately accounted for a moderate impairment in handling stress).[6]

---

[6] Even if the ALJ did err by not including a limitation for timed tasks in Lynn's RFC, such error was harmless. The position of counter-supply worker does not require the performance of timed tasks. *Compare Dictionary of Occupational Titles* 319.687-010, 1991 WL 672772 (Jan. 1, 2016) (describing the job requirements for a counter-supply worker, which do not include any timed tasks), *with id.* at 500.686-010, 1991 WL 673581 (describing the job requirements for an electroplating laborer to include "[i]mmers[ing] workpieces in series of cleaning, plating, pickling, and rinsing tanks, *following timed cycle*" (emphasis added)), *and id.* at 550.585-042, 1991 WL 675048 (describing the job requirements for a chemical tracer-powder blender as "[t]end[ing]

8

In sum, the limitations in the RFC accounted for the moderate impairments found by Dr. Jonas and Dr. Tartar. For that reason, the RFC was supported by substantial evidence, and Lynn's first argument lacks merit.

### B. Evaluation of Lynn's Subjective Complaints

Lynn also argues that the ALJ erred in evaluating her subjective complaints. *See* Docket Item 7-1 at 15. More specifically, she says that the ALJ erred in not crediting her testimony that she needed to change positions frequently and needed a cane to walk. *Id.*

An ALJ must determine "the extent to which [the claimant's] alleged functional limitations and restrictions due to pain or other symptoms can reasonably be accepted as consistent with the medical signs and laboratory findings and other evidence to decide how [the claimant's] symptoms affect [his or her] ability to work." 20 C.F.R. §§ 404.1529(a), 416.929(a). This is a two-step inquiry. *Meadors v. Astrue*, 370 F. App'x 179, 183 (2d Cir. 2010); *see* 20 C.F.R. §§ 404.1529(d), 416.929(d). First, the ALJ

---

remote-controlled tumbling barrels to blend chemicals, adding ingredients in designated sequence *at timed intervals*" (emphasis added)). Lynn, therefore, still could perform substantial gainful activity as a counter-supply worker with an RFC restriction for timed tasks. *Cf. Sanchez v. Berryhill*, 336 F. Supp. 3d 174, 178-79 (W.D.N.Y. 2018) ("Assuming *arguendo* that the ALJ erred in failing to explicitly incorporate moderate limitations with respect to complex tasks and decision-making into his RFC finding, and/or erred by failing to limit plaintiff to unskilled work, such error is harmless. The four jobs identified by the vocational expert are all unskilled positions, which can be performed by individuals with moderate mental deficiencies."); *Akey v. Astrue*, 467 F. App'x 15, 17 (2d Cir. 2012) ("The ALJ's failure to include the limitation to unskilled and semi-skilled work is harmless because the only jobs the vocational expert identified were unskilled or semi-skilled. As such, the ALJ did not err by relying on the vocational expert's testimony as evidence that [Plaintiff] could perform work existing in significant numbers in the national economy.").

"consider[s] whether there is an underlying medically determinable physical or mental impairment[] that could reasonably be expected to produce an individual's symptoms, such as pain."  SSR 16-3p, 2016 WL 1119029, at *2 (Mar. 16, 2016).  "Second, once an underlying physical or mental impairment[] that could reasonably be expected to produce an individual's symptoms is established, [the ALJ] evaluate[s] the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities[.]"  *Id.*

An ALJ's evaluation of a claimant's subjective complaints is "entitled to great deference and therefore can be reversed only if [it is] patently unreasonable."  *Pietrunti v. Dir., Off. of Workers' Comp. Programs*, 119 F.3d 1035, 1042 (2d Cir. 1997) (internal quotation marks and citation omitted); *see also Perez v. Barnhart*, 440 F. Supp. 2d 229, 235 (W.D.N.Y. 2006) (acknowledging that the "patently unreasonable" standard applies in the Social Security context); *David C. v. Comm'r of Soc. Sec.*, — F. Supp. 3d —, 2023 WL 2379007, at *11 (W.D.N.Y. Mar. 6, 2023) (same).  That is because an ALJ "has the opportunity to observe witness's demeanor, candor, fairness, intelligence[,] and manner of testifying" and therefore is in the best position to accurately assess a claimant's subjective complaints.  *David C.*, 2023 WL 2379007, at *11 (internal quotation marks and citation omitted).

The ALJ explicitly addressed Lynn's complaints:

> [Lynn] alleged that she was unable to work due to pain from fibromyalgia . . . and that she used a prescribed cane.  She testified that she had pain all over her body daily, lasting 10 minutes to an hour. . . . She said that if she is in pain she cannot walk to relieve [it].  She testified that she can stand 5-10 minutes, lift about 5 lbs.[,] can walk less than a block, and needs a cane to stand and use stairs.

10

Docket Item 5 at 26. The ALJ then correctly followed the two-step inquiry. At step one, he found that Lynn's "medically determinable impairments could reasonably be expected to produce the above-alleged symptoms[.]" *Id.* At step two, however, he concluded that Lynn's "statements concerning the intensity, persistence[,] and limiting effects of [her] symptoms [were] not entirely consistent with the medical evidence and other evidence in the record . . . ." *Id.*

Lynn argues that the ALJ erred by finding "that the objective evidence did not support [her testimony that she needed to frequently change positions due to her pain], despite finding that she had the severe impairment of fibromyalgia, which does not present with objective evidence." Docket Item 7-1 at 15. And Lynn is correct that fibromyalgia is often unsupported by objective findings. *See* SSR 12-2p, 2012 WL 3104869, at * 2 (Jul. 25, 2012) ("[Fibromyalgia] is a complex medical condition. . . . When a person seeks disability benefits due in whole or in part to [fibromyalgia], we must properly consider the person's symptoms . . . ."). But contrary to Lynn's argument, the ALJ did not require objective medical evidence of fibromyalgia to corroborate her complaints; instead, he looked to other evidence to evaluate whether those complaints accurately related her condition. *See* Docket Item 5 at 25 ("For this purpose, whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the undersigned must consider other evidence in the record to determine if [Lynn's] symptoms limit [her] ability to do work-related activities.").

For example, the ALJ considered Lynn's activities of daily living, her history of conservative pain treatment, the success of her pain treatment, the opinion of

11

consultative examiner John Schwab, D.O., and the prior administrative finding of state agency medical consultant Gary Ehlert, M.D. *See id.* at 25-30. More specifically, the ALJ noted that Lynn experienced improvement in her pain on "her prescribed pain regimen." *See id.* at 27-28; *see also id*. at 483-525 (records of pain specialist Adebukola Abiola, M.D., showing improvement during course of treatment). Likewise, the ALJ noted the largely unremarkable exam findings by Dr. Schwab as well as the fact that Lynn presented to Dr. Schwab with a "history of fibromyalgia that was relieved by medication." *See id.* at 27; *see also id*. at 472 (Dr. Schwab's noting that "[Lynn] gets relief with Lyrica [but] did not know where her trigger points [are]."). And the ALJ noted Dr. Ehlert's conclusion that Lynn could perform medium work with no additional restrictions. *See id.* at 29; *see also id. at* 60 (Dr. Ehlert's opinion also finding that Lynn could sit, stand, or walk for about 6 hours in an 8-hour day with regular breaks); 20 C.F.R. §§ 404.1568(c), 416.967(c) (defining medium work as involving "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds."). So the ALJ's evaluation of Lynn's physical complaints was supported by medical evidence in the record.

In fact, other than by citing her subjective complaints, Lynn does not point to any evidence that would further limit her RFC. *Cf. Smith v. Berryhill*, 740 F. App'x 721, 726 (2d Cir. 2018) ("Here, Smith had a duty to prove a more restrictive RFC, and [he] failed to do so." (citations omitted)). The ALJ therefore did not err in concluding that Lynn's fibromyalgia did not require her to change positions as often as she testified.

Lynn also argues that the ALJ incorrectly rejected her testimony that she needed to use a cane. *See* Docket Item 7-1 at 15. Before an ALJ must find that a claimant

12

needs to use a cane, "there must be medical documentation establishing the need for a hand-held device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information)." SSR 96-9p, 1996 WL 374185, at *7 (Jul. 2, 1996); see Leda I. v. Comm'r of Soc. Sec., 545 F. Supp. 3d 27, 32 (W.D.N.Y. 2021). Here, that evidence is lacking.

While the ALJ acknowledged Lynn's testimony that she "used a prescribed cane," Docket Item 5 at 26, the ALJ also noted the need for that cane only after Lynn's surgery in September 2019, id. at 28. In fact, the cane had been prescribed to provide Lynn "stability for weightbearing as needed" following a bunionectomy with screw fixation on September 9, 2019, id. at 613, 617-18. Lynn showed improvement during her follow-up appointments, see id. at 608-12, but in October, she "likely cracked the healing that had occurred" by being "on her foot too much and running pretty quickly through [a] casino," id. at 606. Nevertheless, on November 19, 2019, Lynn reported that she was "not really having much pain to the area at all during the day or walking," and her provider recommended that she "continue the current therapy for another month." Id. at 605. So the evidence suggests that Lynn needed to use a cane only temporarily after her surgery, and such evidence about temporary use of a cane did not compel the ALJ to conclude that Lynn's use of a cane was medically required.[7] Cf.

---

[7] And even if the ALJ erred in that regard, any error was harmless. Lynn's surgery that necessitated the cane was in September 2019, and the ALJ rendered his decision in March 2020, six months later. So even if Lynn still needed to use a cane then, her use would not meet the 12-month durational requirement. See 20 C.F.R. §§ 404.1509, 416.909 ("Unless [the claimant's] impairment is expected to result in death, it must have lasted or must be expected to last for a continuous period of at least 12 months."). If Lynn's use of a cane was medically necessary for more than a year

*Leda I.*, 545 F. Supp. 3d at 32 ("Here, the record before the ALJ did not contain medical evidence establishing the need for use of a cane. . . . On these facts, the Court finds no error in the ALJ's failure to incorporate use of a cane into the RFC finding."). The ALJ therefore did not improperly reject Lynn's testimony that she had to use a cane.

## CONCLUSION

The ALJ's decision was not contrary to the substantial evidence in the record, nor did it result from any legal error. Therefore, and for the reasons stated above, Lynn's motion for judgment on the pleadings, Docket Item 7, is DENIED, and the Commissioner's cross-motion for judgment on the pleadings, Docket Item 8, is GRANTED. The complaint is DISMISSED, and the Clerk of Court shall close the file.

SO ORDERED.

Dated:    June 20, 2023
          Buffalo, New York

                                          /s/ Lawrence J. Vilardo
                                          LAWRENCE J. VILARDO
                                          UNITED STATES DISTRICT JUDGE

---

after her surgery in September 2019, then her recourse is to file a new application. *Cf. Ritter v. Astrue*, 32 F. Supp. 3d 193, 204 (N.D.N.Y. 2012) ("If Plaintiff developed a disabling knee impairment in the months following the ALJ's decision, her proper recourse would have been to file a new application for benefits." (citing *DeChirico v. Callahan*, 134 F.3d 1177, 1184 (2d Cir. 1998))).